**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **RASHOD BETHANY,**<br><br>              **Plaintiff,**<br><br>     **v.**<br><br>**UNITED STATES OF AMERICA,**<br><br>              **Defendant.** | **Case No. 16 C 3095**<br><br>**Judge Harry D. Leinenweber** |

**MEMORANDUM OPINION AND ORDER**

Prisoner Rashod Bethany petitions under 28 U.S.C. § 2255 for resentencing in light of his counsel's allegedly ineffective assistance at both sentencing and on direct appeal. (Dkt. 1.) For the reasons stated herein, Bethany's Petition is granted.

**I. BACKGROUND**

Bethany pled guilty in 2009 to conspiracy to possess a controlled substance in violation of 18 U.S.C. § 841 and § 846. In March 2013, this Court held a three-day sentencing hearing. After the parties adduced their respective evidence, the Court determined that during the conspiracy, Bethany had been responsible for more than 280 grams of cocaine base. The Court thereafter sentenced Bethany to 25 years. That sentence incorporated three now-at-issue enhancements, for: (1) maintaining a "stash house" or drug premises, U.S.S.G. § 2D1.1(b)(12); (2)

using violence or the threat of violence, U.S.S.G. § 2D1.1(b)(2); and (3) maintaining a criminal livelihood, U.S.S.G. § 2D1.1(b)(14)(E). Each of these enhancements appeared in the 2012 U.S. sentencing guidelines manual, but none was present in the 2005 manual—the manual in effect at the time of Bethany's offense.

This timeline perturbed Bethany's counsel. At sentencing, counsel argued that because the stash house enhancement became effective only after Bethany committed the crime, that enhancement wrought a retrospective punishment upon Bethany in violation of the *ex post facto* clause. U.S. CONST. art. 1, § 9, cl. 3. Counsel did not similarly object to the violence and criminal livelihood enhancements.

The Court expressed some sympathy for Bethany's position, but noted that the then-controlling Seventh Circuit opinion in *United States v. Demaree*, 459 F.3d 791 (7th Cir. 2006), prevented the Court from going along with the argument. (Sentencing Tr. 548:7-22, No. 06-cr-346, Dkt. 317.) *Demaree* stood for the proposition that the *ex post facto* clause applied "only to laws and regulations that bind rather than advise," so changes to the guidelines—by then rendered merely advisory by *United States v. Booker*, 543 U.S. 220 (2005)—could not be considered *ex post facto* laws. *Demaree*, 459 F.3d at 795. Citing the required adherence to *Demaree*, the Court imposed the stash house enhancement (along with the two other

arguably *ex post facto* enhancements against which counsel raised no objection). *Cf. id.* at 792 (reciting that the Sentencing Reform Act, 18 U.S.C. § 3553(a)(4)(A)(ii), requires the trial court to consider the offense category as set forth in the guidelines in effect "on the date the defendant is sentenced").

As Bethany now emphasizes, however, that is not the end of the story. By the time this Court imposed Bethany's sentence, the Supreme Court had granted *certiorari* in *Peugh v. United States*, 569 U.S. 530 (2013), to determine the validity of *Demaree*. A few months later, *Peugh* was handed down and *Demaree* overturned. The Supreme Court announced that under the new law of the land, "[a] retrospective increase in the guideline range applicable to a defendant creates a sufficient risk of a higher sentence to constitute an *ex post facto* violation." *Peugh*, 569 U.S. at 544.

Then came Bethany's appeal. Bethany's appellate counsel (the same as his trial counsel) again tendered the *ex post facto* argument, though this time with the *Peugh* decision in hand. Oddly, though counsel amended the argument on appeal to include not only the stash house enhancement but also the violence enhancement, he left out the criminal livelihood enhancement which was plausibly susceptible to the same attack. *See United States v. Bethany*, 569 F. App'x 447, 452 n.3 (7th Cir. 2014) (remarking upon appellate counsel's omission of the third enhancement). To any extent, as

described in greater detail below, the Seventh Circuit found a fatal flaw in Bethany's argument and rejected it.

Bethany's appellate counsel also argued that Bethany's sentence violated *Alleyne v. United States*, 570 U.S. 99, 103 (2013), which holds that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." Appellate counsel maintained the Court transgressed this rule at sentencing when it determined the quantity of cocaine base for which Bethany was responsible, because determining that fact brought with it a 20-year mandatory minimum.

## II. **DISCUSSION**

Bethany now seeks relief under § 2255. In so doing, Bethany marshals three arguments. First, he repeats the *Alleyne* argument his counsel advanced on direct appeal. In his remaining two arguments, Bethany contends that his counsel rendered ineffective assistance at both sentencing and on direct appeal.

### A. *Alleyne* **Argument**

The doctrine of the law of the case forbids prisoners from relitigating in collateral proceedings issues that were decided on direct appeal. *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004) (citations omitted). Bethany tries to do just that with his *Alleyne* argument, which the Seventh Circuit already dispatched on direct review.

At sentencing, Bethany faced a 20-year statutory minimum based on the amount of cocaine base (more than 280 grams) the Court found him responsible for. On appeal, the Seventh Circuit found the imposition of this minimum inoffensive to the *Alleyne* rule, stating that because Bethany was sentenced to 25 years—a noted downward departure from the guideline range of 360 months to life— "the statutory minimum had absolutely no effect on his ultimate sentence." *Bethany*, 569 F. App'x at 452. The Seventh Circuit thus dealt with this argument already and found no *Alleyne* error. That forecloses the argument. *White*, 371 F.3d at 902.

**B. Ineffective Assistance of Trial Counsel**

Section 2255 provides a remedy to prisoners deprived of the Sixth Amendment right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984) (citation omitted); *Brock-Miller v. United States*, 887 F.3d 298, 304 (7th Cir. 2018). To prevail on an ineffective assistance of counsel claim, a prisoner must demonstrate (1) objectively unreasonable performance and (2) a reasonable probability that, but for the deficient performance, the result of the sentencing would have been different. *See Strickland*, 466 U.S. at 687; *United States v. Peterson*, 711 F.3d 770, 780 n.4 (7th Cir. 2013) ("Ordinarily, when a defendant challenges a sentence on the basis of ineffective assistance of counsel, the *Strickland* standard will apply."). This

is a high bar; when the allegedly deficient performance can be attributed to sound, though ultimately unsuccessful, trial strategy, the ineffective assistance claim fails. *Strickland*, 466 U.S. at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1995)).

Bethany does not dispute that *Demaree* controlled this Court's sentencing decision. Rather, according to Bethany's telling, the Court acknowledged trial counsel's *ex post facto* argument and, keeping in mind "essential fairness," reduced the sentence accordingly as permitted under 18 U.S.C. § 3553(a). (Sentencing Tr. 596:11-19.) Bethany thus contends that, had his trial counsel raised all three of the *ex post facto* enhancements, the Court would have commensurately cut down his sentence even further.

The Court agrees with Bethany that his counsel performed unreasonably by raising only one of the three enhancements. There is no strategic justification for omitting two of the enhancements. Counsel raised the first in the hope that the Court would award Bethany some equitable adjustment given that Bethany had no notice of the stiffer, 2012-guideline penalties when he illegally conspired. (*See* Sentencing Tr. 549:7-15.) Failing to mention the other two enhancements which, under counsel's logic, could have earned Bethany a greater equitable deduction, seems to have been an oversight.

However, the Court does not agree that it would have imposed a different sentence had trial counsel mustered all three enhancement objections. The central premise to Bethany's argument is that the Court decreased Bethany's sentence by some amount because the Court believed that the *ex post facto* enhancement it was bound to apply was fundamentally unfair. It is true the Court factored this into its sentencing determination, but the record does not demonstrate specifically how much of an adjustment Bethany received due to the *ex post facto* concern. Given Bethany's plea, the statutory range for Bethany's possible sentence was 20 to 30 years' incarceration, and the applicable guidelines range was 360 months to life. His counsel requested 20; the government sought 30. The Court imposed the median, 25 years, based on "all of the factors" presented, including the seriousness of the crime, testimony from Bethany's sister, sentencing disparities between powder and crack cocaine, and Bethany's purported need for psychological counseling. (Sentencing Tr. 566:1-596:25.) And, as *Demaree* demanded, the Court refused to wipe out the two-level stash house enhancement—that being the one enhancement counsel objected to. (Sentencing Tr. 596:17-19.) In short, many factors contributed to the Court's sentencing decision, and the Court cannot say that there is a reasonable probability that the Court would have imposed a lighter sentence had trial counsel argued

against all three enhancements.  Bethany thus fails to show prejudice from his trial counsel's performance, dooming the first ineffective assistance argument.

## C. Ineffective Assistance of Appellate Counsel

A prisoner may prevail on a claim for ineffective assistance of appellate counsel "only if he establishes that his appellate counsel failed to raise an issue that was both obvious and clearly stronger than the issues he did raise." *Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009) (citing *Kelly v. United States*, 29 F.3d 1107, 1112 (7th Cir. 1994)).  Said prisoner must also establish prejudice, meaning a "reasonable probability that the issue his appellate attorney failed to raise would have altered the outcome of the appeal, had it been raised."  *Brown v. Finnan*, 598 F.3d 416, 425 (7th Cir. 2010) (citation omitted).

As described above, the legal landscape had shifted by the time Bethany argued his appeal.  The Supreme Court had decided *Peugh,* overturning *Demaree* and emboldening Bethany's counsel in arguing against the *ex post facto* enhancements applied to Bethany at sentencing.  In his § 2255 petition, Bethany contends his appellate counsel made two key errors: (1) counsel argued only two of the three *Peugh*-remand-worthy enhancements; and (2) counsel erroneously argued in favor of a "split-book" sentencing approach, under which the Court would draw upon different guidelines from

discrete manuals to calculate the sentence most favorable to the defendant.  First, the Court agrees, as before, that counsel's failure to object to all three enhancements constituted unreasonable performance.  But judging the second purported error is not as straightforward.

Bethany was sentenced under the 2012 guidelines manual even though that manual was not published until after Bethany committed his crime.  Instead, when Bethany was involved in the conspiracy, the effective guideline manual was the 2005 version.  For present purposes, there are two key differences between those manuals: First, the 2012 manual added the three enhancements at issue in this case; second, the 2012 manual lowered the offense level for the amount of cocaine base for which Bethany was judged responsible.  At issue now is how appellate counsel argued these manuals should be applied to Bethany.  The precise mechanics behind appellate counsel's calculations is not clear from the appellate record, but counsel ostensibly argued that the proper guideline calculation would (1) apply the 2005 manual in omitting the *ex post facto* enhancements (though, again, counsel only challenged two of the three), yet (2) apply the 2012 manual in setting the lower criminal offense level predicated upon the drug quantity at issue.

This split-book approach is verboten, however, both now and when appellate counsel erroneously argued for its application. *See United States v. Hallahan*, 756 F.3d 962, 978 (7th Cir. 2014) (discussing "one-book rule," which precludes split-booking at sentencing). Indeed, the panel admonished Bethany's counsel for applying "the wrong procedure" and advised him that the split-book argument "goes absolutely nowhere." Oral Argument at 7:40-8:05, 14:10-14:20, *United States v. Bethany*, 569 F. App'x 447 (7th Cir. 2014), http://media.ca7.uscourts.gov/sound/2014/sp.13-1777.13-1777_04_10_2014.mp3. Unfortunately for Bethany, his appellate counsel so muddied the waters with the split-book argument that the court of appeals never confronted squarely whether the district court's application of the enhancements warranted reversal and remand. After addressing appellate counsel's misplaced argument, the Seventh Circuit concluded: "Bethany, however, has not argued for the application of the (entire) 2005 manual, *let alone contended that he would have been better off under it*. Thus, Bethany fails to show that that the district court committed reversible error under *Peugh*." *Bethany*, 569 F. App'x at 452 (emphasis added).

This failure unquestionably marks a falling-down on counsel's part. By arguing the diametrically "wrong procedure," counsel neglected an argument "clearly stronger that those presented."

*Smith v. Robbins*, 528 U.S. 259, 288 (2000). The remaining question is whether that deficiency prejudiced Bethany. Finely put, this question asks whether it is reasonably probable that the Seventh Circuit would have opined differently had appellate counsel argued Bethany would have been better served by exclusive application of the 2005 manual.

First of all, it is true that a 2005-only application would have been to Bethany's benefit: Under the 2012 guidelines, Bethany faced 360 months to life. But under the 2005 guidelines, Bethany would have faced a more favorable range of 324-404 months. Bethany contends this fact, alone, entitles him to *habeas* relief. (Bethany incorrectly contends the 2005 guideline range would have been 292-365 months. (Bethany's Reply 6, Dkt. 16.) He apparently reaches this result by applying a 3-level decrease under U.S.S.G. § 3E1.1(a)-(b) rather than the 2-level decrease he actually received at sentencing. (Sentencing Tr. 531:10-11.) Courts may apply a 3-level decrease under § 3E1.1(a)-(b) upon motion by the government, but the government did not so move at Bethany's sentencing and nothing in the record suggests it would have so moved upon reversal and remand from the direct appeal).

In support, Bethany points to *United States v. Adams*, 746 F.3d 734 (7th Cir. 2014). The relevant part of that case's timeline follows:

- Until August 2010, the defendant engaged in a drug distribution conspiracy;

- In November 2010, the "stash house" enhancement, U.S.S.G. § 2D1.1(b)(12), became effective under revised guidelines;

- In July 2012, the district court sentenced defendant and, in keeping with the then-controlling *Demaree* opinion, applied the enhancement (Sentencing Order, No. 10-cr-673-7, Dkt. 722);

- In June 2013, the Supreme Court handed down *Peugh*, overturning *Demaree;*

- In February 2014, the Seventh Circuit ruled on the defendant's direct appeal.

*Adams*, 746 F.3d at 743-45. On appeal, the government acknowledged that the defendant's sentence should be reversed under *Peugh*. *Adams*, 746 F.3d at 743. The Seventh Circuit concurred, suggesting that even though the district court had followed then-controlling law in applying the enhancement, that application constituted an "incorrect guideline calculation" warranting reversal and limited remand for resentencing. *Id.* at 743 ("[W]e have concluded that *where the error involves the incorrect guideline calculation*, the *Paladino* procedure is not appropriate. Thus, in the case before us a *Paladino* limited remand is not appropriate." (emphasis added)).

Clearly, *Adams* is a good case for Bethany. Now on collateral review, Bethany advances that had his appellate counsel argued that Bethany would have been better off under the one-book method, Bethany's appeal would have looked like the defendant's in *Adams*.

As such, Bethany contends, the court of appeals would have found the trial court's pre-*Peugh* sentencing enhancement *ex post facto* and thus deserving of reversal.

The Government responds by citing *Conrad v. United States*, 815 F.3d 324, 328 (7th Cir. 2016), *as amended* (May 24, 2016), *cert. denied*, 137 S. Ct. 1329 (2017), for the proposition that *Peugh* is not retroactive to guideline calculations on collateral review. That much is true, but it is beside the point. The retroactivity question is typically germane only to collateral attacks; on direct review, however, new rules are generally applicable. *Whorton v. Bockting*, 549 U.S. 406, 416 (2007) (citation omitted). In *Conrad*, the Seventh Circuit affirmed what the defendant claimed to be an *ex post facto* sentence *before* the Supreme Court published *Peugh*, so the prisoner could not later, on collateral review, avail himself of that decision. *Conrad*, 815 F.3d at 328.

But *Adams* escapes this problem, because the Seventh Circuit ruled on the direct appeal in that case *after Peugh* was published. The same seems to be true for Bethany. So, had Bethany's appellate counsel performed reasonably and argued that Bethany would have faced a lower sentencing guideline range via a single-book application of the 2005 manual, there is a reasonable probability the Seventh Circuit would have reversed this Court's pre-*Peugh* sentence and remanded. In so ruling in *Adams*, the Seventh Circuit

remarked that "[w]hen a district court incorrectly calculates the guideline range, we normally presume the improperly calculated guideline range influenced the judge's choice of sentence, unless he says otherwise." *Adams*, 746 F.3d at 743. Like the district judge in *Adams*, this Court was bound by *Demaree* at sentencing to apply an "improperly calculated" range; on top of that, the Court nowhere stated that Bethany's sentence would have been the same had the Court relied on the 2005 guidelines for its calculations. Under these circumstances, the court of appeals may well have reversed and remanded in this case. *Cf. United States v. Yihao Pu*, 814 F.3d 818, 827 (7th Cir. 2016) (remanding even though the district court departed downward from an incorrectly-calculated guideline range because the court might have sentenced the defendant differently had it been departing from a different range).

This finding lifts Bethany's petition over the ineffective-assistance hurdle. He has demonstrated both that his counsel performed deficiently and that he suffered prejudice as a result. *See Brown*, 598 F.3d at 425. Accordingly, the Court grants Bethany's request and will schedule a hearing for Bethany to be resentenced. At that hearing, the Court will entertain § 3553 arguments from both parties and apply the guideline calculations present in the 2005 manual. *See Adams*, 746 F.3d at 744-45

(discussing proper scope for resentencing determinations on remand).

### III. <u>CONCLUSION</u>

For the reasons stated herein, the Court believes Bethany's counsel performed deficiently and, but for that deficiency, there is a reasonable probability the Seventh Circuit would have reversed and remanded this Court's sentence as in *Adams*. Accordingly, the Court grants Bethany's petition for resentencing as set forth above.

**IT IS SO ORDERED.**

                                             Harry D. Leinenweber, Judge
                                             United States District Court

Dated:   10/9/2018